Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
STEPHEN F. WILLIAMS, Circuit Judge:
Section 362(a) of the Bankruptcy Code imposes an automatic stay of “any act to obtain possession of property of the estate ... or to exercise control over property of the estate.” 11 U.S.C. § 362(a)(3) (1988). Inslaw, Inc., after filing for reorganization under Chapter 11 of the Bankruptcy Code, invoked § 362(a) to secure bankruptcy court adjudication of a large segment of its prolonged dispute with the Department of Justice over the Department’s right to use a case-tracking software system that In-slaw had provided under contract. Inslaw claimed that the Department had violated *385 the stay provision by continuing, and expanding, its use of the software program in its U.S. Attorneys’ offices. The bankruptcy court found a willful violation, see In re Inslaw, Inc., 83 B.R. 89 (Bankr.D.D.C. 1988), and the district court affirmed on appeal, see United States v. Inslaw, Inc., 113 B.R. 802 (D.D.C.1989). Because we find that the automatic stay does not reach the Department’s use of property in its possession under a claim of right at the time of the bankruptcy filing, even if that use may ultimately prove to violate the bankrupt’s rights, we reverse.
I
Inslaw has built itself around one software product, the Prosecutor’s Management Information System, known by the acronym “PROMIS”. Until January 1981, Inslaw was a nonprofit organization that relied on a variety of public funds to develop a version of PROMIS (“old PROMIS”) that the parties agree is in the public domain. On becoming a for-profit corporation, it continued to make substantial improvements to PROMIS, using private funds. These enhancements, which appear in the version of the software referred to as “enhanced PROMIS”, are the “lifeblood” of Inslaw — “the nucleus of its assets.” 83 B.R. at 170.
Under a March 16,1982 contract with the Department (No. JVUSA-82-C-0074), In-slaw agreed to provide and install old PROMIS on minicomputers in 20 large U.S. Attorneys’ offices and to develop and install a word processor-based version of old PROMIS for use in 74 smaller offices. 83 B.R. at 120-21. The Department agreed to pay $9.6 million.
Because the Department had not selected or acquired hardware to run PROMIS in-house, Inslaw agreed in the meantime to provide PROMIS to the 20 larger offices on a time-sharing basis through telephone links to its own computers, in much the same way LEXIS and WESTLAW provide their services to subscribers. 113 B.R. at 805. Although the parties agree that the original contract required Inslaw only to provide old PROMIS, Inslaw in fact allowed the Department to use the enhanced version, perhaps because it maintained only one time-sharing version, primarily for use by customers entitled to the enhancements. 83 B.R. at 130; 113 B.R. at 805-06.
In November 1982 the Department asked Inslaw, under the terms of the contract, for a copy of “all computer programs and supporting documentation developed for or relating to” the contract. 83 B.R. at 129; 113 B.R. at 805. Both sides understood that the Department wanted a copy of the software being provided on a time-sharing basis, i.e., enhanced PROMIS. 83 B.R. at 129-30. The government claims that this request was prompted by concern about Inslaw’s financial viability, 113 B.R. at 805, but the bankruptcy court found that it was the centerpiece of a Department official’s vindictive efforts “to ruin INSLAW and to bring about DOJ’s wrongful use of IN-SLAW’s Enhanced PROMIS software.” 83 B.R. at 129.
The request touched off the central, but by no means the only, dispute between the parties — whether the Department was entitled, under the contract, to receive the PROMIS enhancements without further payments. 113 B.R. at 805-06. Following a series of negotiations, the parties agreed to a temporary settlement that would allow the contract to be implemented pending final resolution. Under Modification 12 of the contract, adopted April 11,1983, Inslaw agreed to deliver a copy of enhanced PROMIS, as used in the time-sharing arrangement, and the Department agreed to “limit and restrict the dissemination of the said PROMIS computer software to the Executive Office for United States Attorneys, and to the 94 United States Attorneys’ Offices covered by the Contract ... pending resolution of the issues extant between [Inslaw] and the Government under the terms and conditions of Contract No. JVUSA-82-C-0074.” Joint Appendix (“J.A.”) at 162; see 113 B.R. at 806. The issues to be resolved included the dispute over the PROMIS enhancements, as well as a dispute over advance payments due under the contract. 113 B.R. at 806. On *386 April 20, 1983, Inslaw sent the Department computer tapes that contained copies of the source and object codes for the version of enhanced PROMIS it had been providing on a time-sharing basis. J.A. at 164. While “object codes” contain unintelligible strings of numbers and letters that actually tell the machine what to do, “source codes” (used to generate object codes) are written in programming languages that can be deciphered by skilled computer programmers. See Melvin F. Jager, Trade Secrets Law ¶ 9.03 (1985).
From August 1983 until January 1984, Inslaw proceeded under the contract to install enhanced PROMIS on minicomputers in 22 large U.S. Attorneys’ offices. 83 B.R. at 106; 113 B.R. at 806; Brief for Appellants at 8. Inslaw provided the enhanced version of PROMIS to each office under the belief that Modification 12 so required, and the bankruptcy court found that the Department, in return, made a commitment to bargain in good faith to identify Inslaw’s proprietary enhancements, to decide which enhancements it wanted to use, and to agree on an additional price for any it decided to keep. 83 B.R. at 136-38. The court also concluded that the Department never intended to keep these commitments. 83 B.R. at 138.
Inslaw filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on February 7, 1985. One month later, Inslaw’s contract with the Department expired, by which time Inslaw had received almost all of the original $9.6 million contract price. Brief for Appellants at 8. Between June 24, 1985 and September 2, 1987, the Department installed enhanced PROMIS in 23 additional U.S. Attorneys’ offices. 113 B.R. at 806; 83 B.R. at 152. A key dispute between the parties is whether this extension of the system beyond the 20 offices slated for the minicomputer version is permitted by Modification 12. The Modification, it will be recalled, in literal terms provides for dissemination of the software to be limited to “the 94 United States Attorneys’ Offices covered by the Contract”. J.A. at 162. However, as the contract looked to provision of a word-processing version for 74 smaller U.S. Attorneys’ offices, and the Department terminated the word-processing portion in February 1984, the bankruptcy court construed the modification as limiting the minicomputer version of PROMIS to the 20 larger offices. 83 B.R. at 121, 135, 139-40, 166-67.
On October 17, 1985, Inslaw filed a claim with the contracting officer, under the provisions of the Contract Disputes Act, 41 U.S.C. §§ 601-613 (1988), alleging (among other claims) that the Department had refused to identify and pay for proprietary enhancements not covered by the original contract, and that it had made copies of enhanced PROMIS for use in additional offices after the contract expired. See J.A. at 195, 198-200. Inslaw asked for $2.9 million in license fees for use of the enhancements. Mem.Op. at 9; see J.A. at 198-200. The contracting officer ruled against Inslaw on February 21, 1986. J.A. at 213, 215. Inslaw did not pursue these claims when it appealed the contracting officer’s decision to the Department of Transportation Board of Contract Appeals (apparently the appropriate appellate body, its name being a vestige of an earlier, more limited jurisdiction). See DOTCBA No. 1775, Complaint filed September 19, 1986.
On June 10, 1986 Inslaw filed a four-count complaint against the government in bankruptcy court, alleging that the Department was willfully violating § 362(a), the automatic stay provision of the Bankruptcy Code. The asserted violation lay primarily in the Department’s continuing to use In-slaw’s property — enhanced PROMIS — without Inslaw’s consent. Inslaw sought declaratory and injunctive relief, as well as compensatory damages, punitive damages, costs and attorney’s fees. Stating that “[t]he scope of the automatic stay is ‘extremely broad’ ”, the bankruptcy court denied the government’s motion to dismiss the proceeding. In re Inslaw, Inc., 76 B.R. 224, 228 (Bankr.D.D.C.1987) (quoting 2 Lawrence P. King, Collier on Bankruptcy II 362.04 (15th ed.)). After trial, it found that the government had violated the automatic stay, and issued a declaratory judgment and a permanent injunction against further expansion of the government’s use of enhanced PROMIS. In re Inslaw, Inc., *387 83 B.R. 89 (Bankr.D.D.C.1988). It ordered the government to pay nearly $6.8 million in compensatory damages for use of enhanced PROMIS, both the portions installed by Inslaw and those installed by the Department (calculated on the basis of In-slaw’s standard perpetual license fees), and almost $1 million in attorney’s fees and expenses. See Final Judgment Order entered February 2, 1988; Final Judgment Order (Attorneys’ Fees) entered February 6, 1988.
In response to a separate motion by In-slaw, the bankruptcy court also found that the Department had violated the automatic stay by urging the Director of the Executive Office of the United States Trustees[1] to seek conversion of Inslaw’s Chapter 11 reorganization proceeding into one under Chapter 7 looking to the liquidation of In-slaw. See 83 B.R. at 149-50; 113 B.R. at 806-07.
On appeal, the district court upheld the judgments of the bankruptcy court but reduced the damage award by $655,200. 113 B.R. at 820-21.
II
Section 362(a) provides that the filing of a bankruptcy petition
operates as a stay, applicable to all entities, of—
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate____
11 U.S.C. § 362(a) (1988) (emphasis added). Because we find as a matter of law that none of the acts or omissions alleged by Inslaw would amount to a violation of the automatic stay, we conclude that the bankruptcy court should have granted the Department’s motion to dismiss.
A
Inslaw’s major allegation concerns the Department’s use of enhanced PROMIS after the filing of the bankruptcy petition. The bankruptcy court concluded first that the privately-funded enhancements to PROMIS were proprietary trade secrets owned by Inslaw, 83 B.R. at 159, and then that the Department’s continued use of these enhancements, and in particular its post-petition installation of enhanced PROMIS in 23 U.S. Attorneys’ offices (in addition to the 22 where Inslaw had made installations), were a “willful exercise of control over the property of the estate.” 83 B.R. at 166, 168.
The automatic stay protects “property of the estate”. This estate is created by the filing of a petition and comprises property of the debtor “wherever located and by whomever held”, including (among other things) “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1) (1988). It is undisputed that this encompasses causes of action that belong to the debtor, as well as the debtor’s intellectual property, such as interests in patents, trademarks and copyrights. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (“House Report”); S.Rep.No. 989, 95th Cong., 2d Sess. 82 (“Senate Report”), U.S. Code Cong. & Admin.News 1978, p. 5787; United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983); In re S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987); 4 King, Collier on Bankruptcy 1111541.06, 541.10. The estate also includes property recoverable under the Code’s “turnover” provisions, which allow the trustee to recover property that “was merely out of the possession of the debtor, yet remained ‘property of the debtor.’ ” House Report at 367; Senate Report at 82, U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323; see 11 U.S.C. §§ 542, 543 (turnover provisions); Whiting Pools, 462 U.S. at 204-09 & n. 11,103 S.Ct. at 2313-16 & n. 11.
In its brief Inslaw refers rather vaguely to its interest in the enhanced *388 PROMIS software as the “property of the estate” over which the Department supposedly exercised control. But for meaningful analysis, Inslaw’s interests must be examined separately. One set of interests consists of (1) the computer tapes containing copies of the source and object codes that Inslaw sent to the Department on April 20, 1983 and (2) the copies of enhanced PROM-IS that Inslaw installed on Department hardware between August 1983 and January 1984. As to these, Inslaw held no possessory interest when it filed for bankruptcy on February 7, 1985. Nor can it claim a possessory interest over them through the Code’s turnover provisions, as could the debtor-in-possession in Whiting Pools, because, as Inslaw freely admits, the Department held possession of the copies under a claim of ownership (its view of the contract and Modification 12) and claimed the right to use enhanced PROMIS without further payment. It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute. See In re Charter Co., 913 F.2d 1575, 1579 (11th Cir.1990); In re Satelco, Inc., 58 B.R. 781, 786 (Bankr.N.D.Tex. 1986); In re Chick Smith Ford, Inc., 46 B.R. 515, 518 (Bankr.M.D.Fla.1985); In re FLR Co., 58 B.R. 632 (Bankr.W.D.Pa.1985); cf. In re Knaus, 889 F.2d 773, 775 (8th Cir.1989) (turnover of property admitted to belong to the debtor is required); SBA v. Rinehart, 887 F.2d 165, 168 (8th Cir.1989) (same). Indeed, Inslaw never sought possession of the copies under the turnover provisions.
The bankruptcy court instead identified the relevant property as Inslaw’s intangible trade secret rights in the PROMIS enhancements. 83 B.R. at 165. It then found that the Department’s continuing use of these intangible enhancements was an “exercise of control” over property of the estate. 83 B.R. at 166, 168.
If the bankruptcy court’s idea of the scope of “exercise of control” were correct, the sweep of § 362(a) would be extraordinary — with a concomitant expansion of the jurisdiction of the bankruptcy court. Whenever a party against whom the bankrupt holds a cause of action (or other intangible property right) acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee, he would risk a determination by a bankruptcy court that he had “exercised control” over intangible rights (property) of the estate.[2] In making that determination (one way or the other), the bankruptcy court would be exercising its “core” jurisdiction over the dispute, subject to review by an Article III court on fact issues only under the deferential “clearly erroneous” standard. See 28 U.S.C. § 158; Bankruptcy Rule 8013; 1 King, Collier on Bankruptcy II 3.03[7]; see also 28 U.S.C. § 157(b) (1988) (identifying “core” proceedings); Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292 (4th Cir. 1986) (automatic stay violations are within the core).
Such assertions of bankruptcy court jurisdiction raise severe constitutional problems. As the Supreme Court made clear in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress may not vest in a non-Article III (bankruptcy) court the power to adjudicate a traditional contract action where the defendant is before the court “only because the plaintiff has previously filed a petition for reorganization in that court.” Id. at 90,102 S.Ct. at 2881 (Rehnquist, J., concurring); see Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985); Commodity Futures Trading Comm’n v. Schor, 478 U.S. *389 838, 848-57, 106 S.Ct. 3245, 3255-60, 92 L.Ed.2d 675 (1986); see also Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (defendant in an action by a bankruptcy trustee to recover a pre-petition fraudulent conveyance under 11 U.S.C. § 548(a)(2) has a Seventh Amendment right to a jury trial). Congress responded to Northern Pipeline with the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98-353, 98 Stat. 333 (1984), limiting bankruptcy courts’ jurisdiction over disputes that are “related to” a bankruptcy case only because the owner of the cause of action filed for bankruptcy. See 28 U.S.C. §§ 157(c), 1334(b); 1 King, Collier on Bankruptcy ¶[ 3.01[l][c][iv] (debtor’s causes of action are “related to” proceedings under § 1334(b)); id. ¶ 3.01[2][b][ii] (“related to” proceedings are “non-core” proceedings under § 157(c)). In asking us to allow the bankruptcy court to decide a wide range of “non-core” disputes under the guise of an automatic stay violation, Inslaw ignores Northern Pipeline and Congress’s response.
Even apart from constitutional concerns, Inslaw’s view of § 362(a) would take it well beyond Congress’s purpose. The object of the automatic stay provision is essentially to solve a collective action problem — to make sure that creditors do not destroy the bankrupt estate in their scramble for relief. See House Report at 340; Senate Report at 49, 54-55. Fulfillment of that purpose cannot require that every party who acts in resistance to the debtor’s view of its rights violates § 362(a) if found in error by the bankruptcy court. Thus, someone defending a suit brought by the debtor does not risk violation of § 362(a)(3) by filing a motion to dismiss the suit, though his resistance may burden rights asserted by the bankrupt. Martin-Trigona v. Champion Fed. Sav. & Loan Ass’n, 892 F.2d 575, 577 (7th Cir.1989). Nor does the filing of a lis pendens violate the stay (at least where it does not create a lien), even though it alerts prospective buyers to a hazard and may thereby diminish the value of estate property. In re Knightsbridge Development Co., 884 F.2d 145, 148 (4th Cir.1989). And the commencement and continuation of a cause of action against the debtor that arises post-petition, and so is not stayed by § 362(a)(1), does not violate § 362(a)(3). In re Continental Air Lines, Inc., 61 B.R. 758, 775-80 (S.D.Tex.1986). Since willful violations of the stay expose the offending party to liability for compensatory damages, costs, attorney’s fees, and, in some circumstances, punitive damages, see 11 U.S.C. § 362(h) (1988), it is difficult to believe that Congress intended a violation whenever someone already in possession of property mistakenly refuses to capitulate to a bankrupt’s assertion of rights in that property.[3]
The limits of the turnover provisions in the bankruptcy code underscore the improbability that Congress intended § 362(a) to have the sweeping scope that Inslaw would assign it. It is common ground that these cannot be used against property held by another under a claim of legal right. See cases cited at p. 1472 above. As In-slaw’s view would turn every act of the possessor that implicitly asserts his title over disputed property into a violation of § 362(a), it would give the bankruptcy court jurisdiction over all such disputes, creating a kind of universal end-run around the limits on turnover.
Our understanding of § 362(a) does not expose bankrupts to any troubling hazard. Here, for example, Inslaw retains whatever intangible property rights it had in enhanced PROMIS at the time of filing. If the Department has violated the contract or Modification 12, Inslaw as debtor-in-possession has all the access to court enjoyed *390 by any victim of a contract breach by the United States government. If Modification 12 was induced by fraud, as the bankruptcy court found, then Inslaw has its contract remedies or perhaps a suit for conversion. Assuming that its privately-funded enhancements to PROMIS qualify as proprietary trade secrets, as the bankruptcy court found, it may be able to sue the government under the Trade Secrets Act or even under the Administrative Procedure Act for improper disclosures of its trade secrets by government officials. See Mega-pulse, Inc. v. Lewis, 672 F.2d 959 (D.C.Cir. 1982).
Extending the expansive mood expressed in its decision on use of enhanced PROMIS, the bankruptcy court found two violations arising from the Department’s failure to cure alleged pre-petition misconduct. First, having found fraud in the inducement of Modification 12, it found a violation in the Department’s failure to cure the fraud. 83 B.R. at 169. Second, it held that the Department’s “failures to act to remedy past acts of bias, impartiality [sic] and harassment against INSLAW also constitute actionable violations of the automatic stay provisions.” Id. One of the remedies given by the court for these violations was an order enjoining the Department from allowing three named officials to participate in any further decisions, negotiations or proceedings (including the contract appeals board case) involving Inslaw.
Here the bankruptcy court appears to have left the words of the statute in the dust. The automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate. Nowhere in its language is there a hint that it creates an affirmative duty to remedy past acts of fraud or bias or harassment as soon as a debtor files a bankruptcy petition. The statutory language makes clear that the stay applies only to acts taken after the petition is filed. See 11 U.S.C. § 362(a); In re Stucka, 77 B.R. 777, 782 (Bankr.C.D.Cal.1987) (“The automatic stay is effective as of the moment of filing of the bankruptcy petition.”); In re Mewes, 58 B.R. 124, 127 (Bankr.D.S. D.1986) (same).
Like the defendant in Northern Pipeline, the Department has been hauled in front of the bankruptcy court simply because Inslaw filed for bankruptcy, and In-slaw has succeeded in convincing the bankruptcy court to adjudicate its contract, tort (conversion), trade secret, and administrative law (impartiality) disputes with the Department, although the court had no basis under the Bankruptcy Code to do so. Because the Department has taken no actions since the filing of the bankruptcy petition that violate the automatic stay, the bankruptcy court must, as both a statutory and constitutional matter, defer to adjudication of these matters by other forums.
B
In a separate order, the bankruptcy court held that the Department violated the automatic stay by contacting the Director of the Executive Office of the United States Trustees in an effort to have Inslaw’s Chapter 11 reorganization converted into a liquidation under Chapter 7. 113 B.R. at 806-07; 83 B.R. at 149-50. Here, the literal words of § 362(a) might actually cover a request by the U.S. Trustee to liquidate Inslaw’s assets under Chapter 7, since such a request could be characterized as an act to liquidate “property of the estate”. For obvious reasons, however, courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code, such as motions to convert reorganizations to liquidation proceedings, see 11 U.S.C. § 1112(b) (1988). Thus, even if the Department had managed to instigate the filing of a motion to convert (which it did not), as a matter of law there would be no violation of § 362(a). See In re Hodges, 83 B.R. 25, 26 (Bankr.N. D.Cal.1988). Once again, there was no basis for finding a violation of the automatic stay.
The bankruptcy and district courts here both concluded that the Department “fraudulently obtained and then converted enhanced PROMIS to its own use”. 113 *391 B.R. at 818. Such conduct, if it occurred, is inexcusable. Offensive as lawless conduct by one branch of government may be, however, see Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Brandéis, J., dissenting), quoted in In re Inslaw, Inc., 83 B.R. at 172, it does not justify another’s lawlessness. As the bankruptcy court had no jurisdiction to hear the claims asserted under § 362(a), we reverse the district court and remand the case with directions to vacate all orders concerning the Department’s alleged violations of the automatic stay and to dismiss Inslaw’s complaint against the Department.

So ordered.

. The United States Trustees are a corps of “generally autonomous” or "semiautonomous” officials appointed by the Attorney General to serve as bankruptcy trustees. See 1 King, Collier on Bankruptcy ¶ 6.25.

. Under this view, it does not matter whether the Department has possession of the PROMIS enhancements under a claim of outright title, as they do, or under a more limited lease or license. In both situations, a party in possession of an asset in which the bankrupt has an interest would violate § 362(a) by any act inconsistent with the bankrupt’s claims as determined by the bankruptcy court. As a result, a wide range of disputes, such as a bankrupt lessor’s claims against a lessee, or a bankrupt co-owner’s claims against other holders of concurrent property interests, would slide into bankruptcy court.

. In adding the "exercise control” language to § 362(a)(3) in the 1984 Bankruptcy Amendments, see 98 Stat. at 371, Congress gave no explanation. One court has traced this language to the description of § 362(a)(3) found in the committee reports on the 1978 Bankruptcy Act, which refer to property of the estate as "property over which the estate has control or possession”. See In re 48th Street Steakhouse, Inc., 61 B.R. 182, 187 & n. 10 (Bankr.S.D.N.Y. 1986), aff’d, 77 B.R. 409 (S.D.N.Y.), aff'd, 835 F.2d 427 (2d Cir.1987); House Report at 341; Senate Report at 50.