**CHECKERS DRIVE–IN RESTAURANTS, INC., Appellant,**

v.

**COMMISSIONER OF PATENTS AND TRADEMARKS, Appellee.**

No. 94–5027.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 17, 1995.

Decided April 21, 1995.

David M. Pitcher argued the cause and filed the briefs, Washington, DC, for appellant.

Nancy C. Slutter, Associate Sol., U.S. Patent and Trademark Office, argued the cause, for appellee. With her on the brief was Albin F. Drost, Deputy Sol., U.S. Patent and Trademark Office. Fred E. McKelvey, Washington, DC, entered an appearance.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This appeal concerns the scope of the automatic stay provision under the Bankruptcy Code. This provision, which is found at 11 U.S.C. § 362(a) (1988), generally operates to block legal actions that could affect the property of a debtor in bankruptcy, and it serves both to shelter the debtor from harassment and to prevent creditors from engaging in a race to liquidate the estate's assets.

Appellant, Checkers Drive–In Restaurants, Inc., ("Checkers"), claims the automatic stay barred it from filing an affidavit as normally required to maintain its federal service mark registration pursuant to section 8 of the Lanham Trademark Act, 15 U.S.C. § 1058 (1988) ("Lanham Act"). Under section 8 of the Lanham Act, a service mark registration is canceled at the end of six years following the date of registration, unless the registrant files an affidavit (between the fifth and sixth years) setting forth his or her current use of the mark. *Id.* Checkers's section 8 filing came due while it was pursuing a petition to cancel a competing service mark registration of a debtor in bankruptcy. Checkers failed to file the required affidavit during the statutory period, allegedly on the assumption that the Bankruptcy Code's automatic stay provision barred the required filing. The United States Patent and Trademark Office then canceled Checkers's service mark registration. Checkers appealed to the Commissioner of Patents and Trademarks ("Commissioner"), arguing that, because the automatic stay barred it from filing the affidavit, its failure to do so did not warrant the cancellation of its service mark registration under the Lanham Act. Rejecting this reasoning,

the Commissioner denied Checkers's appeal. When Checkers challenged this decision in the District Court, the trial judge granted the Commissioner's motion for summary judgment. Checkers now appeals from that decision.

We affirm the judgment of the District Court. Although the Bankruptcy Code's automatic stay provision is broad in scope, it does not reach as far as Checkers would stretch it here. Checkers asserts that the section 8 filing requirement was stayed by operation of either of two subsections of the automatic stay provision. The first stays the continuation of any judicial, administrative, or other action against the debtor if the action was begun before the debtor filed its petition for bankruptcy. *See* 11 U.S.C. § 362(a)(1). The second stays any act to take possession of, or exercise control over, property held by the bankrupt's estate. *See id.* § 362(a)(3). We find neither to apply. Checkers's filing of a section 8 affidavit was not part of its claim against the debtor, nor would it have affected the debtor's property. Rather, it would have merely maintained the status quo with respect to Checkers's own property. Accordingly, we hold that the Commissioner properly canceled Checkers's registration.

## I. BACKGROUND

This case arises from a dispute between two owners of federally registered service marks, both of which employed the word "Checkers" in their design.[1] Checkers owned, by assignment, a service mark for use in connection with its marketing of restaurant services. Checkers's mark was registered pursuant to the Lanham Act on October 23, 1984. By virtue of this registration, Checkers gained a number of benefits, for federal registration of a trademark or service mark constitutes "prima facie evidence of the validity of the registered mark and of the

---

1. The Lanham Act defines a service mark as "any word, name, symbol, or device, or any combination thereof ... [used or intended to be used] to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127 (1988).

By contrast, a trademark is "any word, name, symbol, or device, or any combination thereof ... [used or intended to be used by a person] to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Id.*

registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the [registration] certificate." 15 U.S.C. § 1057(b) (1988). Moreover, the Lanham Act provides registrants with the opportunity to recover treble damages for violations of their rights, *see* 15 U.S.C. § 1117(a) (1988), and, after five years of continuous use, permits registrants to make their rights "incontestable"—*i.e.,* to transform their registration into conclusive evidence of their rights—by filing an affidavit setting forth certain information, *see id.* §§ 1065, 1115(b) (1988).

However, section 8 of the Lanham Act provides that, to maintain these benefits, all registrants must file, between the fifth and sixth years after initial registration, an affidavit setting forth the continued use of the registered mark in commerce "on or in connection with" the goods or services listed in the registration statement for the mark, or providing an adequate explanation for nonuse of the mark. 15 U.S.C. § 1058(a). If a registrant fails to file the required affidavit, the Commissioner by law must cancel its registration at the end of the sixth year.[2] *Id.* Thus, Checkers was required to file its section 8 affidavit no later than October 23, 1990, to maintain the registration of its service mark.

On March 16, 1988, another service mark registrant, Checkers Restaurant Group, Inc., ("CRG"), petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel Checkers's registration pursuant to 15 U.S.C. § 1064 (1988), which provides for the filing of such a cancellation petition "by any person who believes that he is or will be damaged by the registration of a mark on the principal register." In support of its petition, CRG argued, *inter alia,* that Checkers's registration inter-

fered with CRG's federally guaranteed right to use its service mark "in other than its existing geographic area." Appendix for Appellant ("App.") 18. Checkers answered this cancellation petition and counterclaimed, seeking to cancel CRG's own service mark on essentially the same grounds.

In August 1989, before these competing cancellation claims could be resolved, CRG filed a petition for relief under Chapter 11 of the federal Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1988 & Supp. V 1993), in the United States Bankruptcy Court for the Eastern District of New York. In so doing, CRG triggered the application of the automatic stay provision, 11 U.S.C. § 362(a), which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of eight different categories of conduct encompassing a wide swath of legal actions, including litigation, lien enforcement, and administrative proceedings, that could affect or interfere with the property of the bankrupt's estate. Accordingly, on January 8, 1990, CRG petitioned the TTAB to stay all proceedings relating to the cross-cancellation petitions filed by itself and Checkers. The TTAB responded on February 16, 1990, with an order staying the cancellation proceeding "since petitioner's registration is the subject of a counterclaim." *Checkers Restaurant Group, Inc. v. Checkers of North America, Inc.,* Cancellation No. 17,053, slip op. at 1–2 (Feb. 16, 1990), *reprinted in* App. 31–32.

Checkers and CRG then negotiated a settlement agreement by which CRG transferred all rights to its service mark to Checkers in exchange for $42,500, and Checkers granted CRG a license to use its service mark at CRG's two existing restaurants in New York City. On November 30, 1990, the Bankruptcy Court approved this settlement. Accordingly, on December 19, 1990, Check-

---

**2.** Section 8(a) of the Lanham Act states:

Each certificate of registration shall remain in force for ten years: *Provided,* That the registration of any mark under the provisions of this chapter shall be canceled by the Commissioner at the end of six years following its date, unless within one year next preceding the expiration of such six years the registrant shall file in the Patent and Trademark Office an affidavit setting forth those goods or services recited in the regis-

tration on or in connection with which the mark is in use in commerce and attaching to the affidavit a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. Special notice of the requirement for such affidavit shall be attached to each certificate of registration.
15 U.S.C. § 1058(a).

ers moved the TTAB to lift the stay it had imposed on the cancellation proceedings, dismiss those proceedings as moot, and accept a section 8 affidavit filed concurrently. In response, the TTAB dismissed the parties' cancellation petitions with prejudice, and forwarded Checkers's section 8 affidavit to the Post–Registration Section of the Patent and Trademark Office for consideration.

However, because Checkers filed the affidavit after October 23, 1990, that Office's Affidavit/Renewal Examiner rejected it as untimely and canceled Checkers's service mark registration. Checkers sought relief from the Commissioner, arguing that the automatic stay imposed by 11 U.S.C. § 362(a) prevented it from filing a section 8 affidavit during the pendency of the cancellation proceedings, and that, after the stay was lifted, its section 8 affidavit was timely filed pursuant to 11 U.S.C. § 108(c) (1988), which extends periods fixed by nonbankruptcy law "for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor" until 30 days after a stay is terminated, if the period fixed by nonbankruptcy law already has run.[3] The Commissioner rejected Checkers's argument, reasoning that

> this petitioner was not the party in bankruptcy and the filing of a Section 8 affidavit in relation to its [service mark registration] would not have been an exercise of control over a debtor in bankruptcy nor would it have furthered any claim against the debtor. The Section 8 filing would have spoken only to the petitioner's own continued use of its own registration.

*In re Trademark Registration of Checkers of North America, Inc.,* No. 91–272(R), slip op. at 3 (Feb. 11, 1993) (footnote omitted), *reprinted in* App. 129. Checkers sought judicial review of the Commissioner's decision by filing suit in the District Court. On January 7, 1994, the District Court granted summary judgment for the Commissioner, holding that the Bankruptcy Code did not stay Checkers's obligation to file a timely section 8 affidavit. *See Checkers Drive–In Restaurants, Inc. v. Commissioner of Patents and Trademarks,* Civ. Action No. 93–1024–TFH, slip op. at 12–21 (D.D.C. Jan. 7, 1994), *reprinted in* App. 219–28.[4]

## II. ANALYSIS

On appeal, Checkers claims the District Court erred in rejecting its argument that the automatic stay provision blocked the filing of a section 8 affidavit while Checkers was pursuing its cancellation petition against a debtor in bankruptcy. Specifically, Checkers claims that either of two subsections of the automatic stay provision operated to bar the required filing. The first stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the" bankruptcy. 11 U.S.C. § 362(a)(1). The second stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). We review *de novo* the District Court's grant of summary judgment on this issue. *See Harbor Ins. Co. v. Stokes,* 45 F.3d 499, 501 (D.C.Cir.1995).

In the words of the Congress that enacted it, the automatic stay imposed by 11 U.S.C. § 362(a) "is one of the fundamental debtor protections provided by the bankruptcy laws." S. REP. No. 989, 95th Cong., 2d Sess. 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840; H.R. REP. No. 595, 95th Cong.,

---

**3.** Section 108(c) provides, in relevant part:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362 ...

of this title ... with respect to such claim.

11 U.S.C. § 108(c).

**4.** Meanwhile, Checkers obtained a new service mark from the Commissioner that is only slightly different from its previous mark.

2d Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296.

> It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S. Rep. No. 989 at 54–55, *reprinted in* 1978 U.S.C.C.A.N. 5840–41; H.R. Rep. No. 595 at 340, *reprinted in* 1978 U.S.C.C.A.N. 6296–97. The automatic stay also offers important protection for creditors.

> Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

S. Rep. No. 989 at 49, *reprinted in* 1978 U.S.C.C.A.N. 5835; H.R. Rep. No. 595 at 340, *reprinted in* 1978 U.S.C.C.A.N. 6297; *see also United States v. Inslaw, Inc.,* 932 F.2d 1467, 1473 (D.C.Cir.1991) ("The object of the automatic stay provision is ... to make sure that creditors do not destroy the bankrupt estate in their scramble for relief."), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989) (stating that automatic stay seeks "to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors").

■ To effectuate these congressional purposes, section 362(a) generally must be construed broadly. *See* 2 Collier on Bankruptcy ¶ 362.04 (Lawrence P. King ed., 15th ed. 1994) ("The stay of section 362 is extremely broad in scope and ... should apply to almost any type of formal or informal action against the debtor or the property of the estate."); *see also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474

U.S. 494, 504, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (recognizing that, "in enacting § 362 in 1978, Congress significantly broadened the scope of the automatic stay"). Its breadth is not unlimited, however. As the Ninth Circuit has stated, "while seemingly broad in scope, the automatic stay provisions should be construed no more expansively than is necessary to effectuate legislative purpose." *In re Chugach Forest Prods., Inc.,* 23 F.3d 241, 245 (9th Cir.1994) (quoting *In re Continental Air Lines, Inc.,* 61 B.R. 758, 779 (S.D.Tex.1986)). Thus, we have held that, although the automatic stay blocks many legal actions against the debtor, it does not similarly bar claims brought by the debtor against other parties. *See Carley Capital Group v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989) (*per curiam*). More recently, in *Inslaw,* we held that the automatic stay did not bar the Department of Justice from using computer software provided by, and claimed by, a debtor in bankruptcy. 932 F.2d at 1472–74. In so doing, we rejected the debtor's argument that the Department's use of the software without the debtor's consent amounted to an "exercise of control" over property of the estate within the meaning of subsection 362(a)(3), commenting that such a construction of the statute "would take it well beyond Congress's purpose." *Id.* at 1472–73.

Like the debtor in *Inslaw,* Checkers here asserts a construction of section 362(a) that would extend that provision "well beyond Congress's purpose." The policies underlying the automatic stay—those of sheltering the debtor from the demands of creditors and preserving the bankrupt's estate pending orderly distribution by a trustee—are not implicated by an act, such as Checkers's filing of a section 8 affidavit, that has no effect upon a claim against the debtor or the property of the estate, but rather maintains the status quo with respect to the property of an entity engaged in litigation with the debtor. We therefore reject Checkers's contention that the filing required by section 8 of the Lanham Act in this case would have constituted either the "continuation" of an "action or proceeding against the debtor" within the meaning of subsection 362(a)(1), or

an act "to exercise control over property of the estate" within the meaning of subsection 362(a)(3).

## A. *Subsection 362(a)(1)*

■ Checkers first claims that its filing of a section 8 affidavit was stayed by subsection 362(a)(1), which bars legal actions that continue a pre-petition claim against the debtor. Checkers rests its argument on that portion of its cancellation petition alleging that CRG's registration interfered with Checkers's right to use its service mark outside of its existing geographic area. *See* 15 U.S.C. § 1057(b) (stating that federal registration is "prima facie evidence ... of the registrant's exclusive right to use the registered mark in commerce"); *see also* 3 J. THOMAS MCCAR-THY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26.13[1] (3d ed. 1994) ("[T]he owner of a Principal Register registration has superior rights throughout the United States."). Checkers contends that, because this claim alleged interference with a right guaranteed to Checkers by virtue of the federal registration of its service mark, its maintenance of federal registration was necessary to its ability to bring the claim. Thus, Checkers argues, any act to maintain its federal registration—such as the filing of a section 8 affidavit—constituted the "continuation" of its claim against the debtor within the meaning of subsection 362(a)(1). This is a specious claim.

■ Subsection 362(a)(1) stays the continuation of "a judicial, administrative, or other action or proceeding *against the debtor*." 11 U.S.C. § 362(a)(1) (emphasis added). Checkers's interpretation of this provision would extend the automatic stay to encompass not only actions against the debtor, but also acts that maintain the status quo within which such actions exist. In this case, the action against the debtor was Checkers's cancella-

tion claim against CRG. Checkers's filing of a section 8 affidavit constituted no part of that claim. Rather, the filing served merely to maintain the status quo with respect to Checkers's own pre-existing service mark registration. We discern nothing in the automatic stay provision nor in its underlying policy to suggest that Congress intended it to block actions that maintain the status quo between a debtor and its legal adversary. To the contrary, our review of the legislative history reveals precisely the opposite intent—for, as already mentioned, Congress included section 362(a) in the Bankruptcy Code to ensure the preservation of the status quo between a debtor and its creditors. *See In re Chugach Forest Prods.*, 23 F.3d at 243 ("[The automatic stay] is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate.") (internal quotations omitted); *In re Morton*, 866 F.2d 561, 564 (2d Cir.1989) (holding that operation of state law requiring lien holder to renew lien in state court was not stayed by section 362 because "extension ... simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it").

The cases cited by Checkers are not to the contrary. Checkers relies on cases from the bankruptcy courts holding that the automatic stay barred filings required to revive a pre-petition judgment lien, *see In re Thomasson*, 66 B.R. 503, 505 (Bankr.W.D.Mo.1986), to reinscribe a notice of assignment of the debtor's accounts receivable, *see In re Pernie Bailey Drilling Co., Inc.*, 131 B.R. 53, 59 (Bankr.W.D.La.1991), *aff'd*, 157 B.R. 100 (W.D.La.1992), *aff'd*, 993 F.2d 67 (5th Cir. 1993), and to extend an attachment of the debtor's property, *see In re Paul*, 67 B.R. 342, 346–47 (Bankr.D.Mass.1986).[5] While we

---

5. Checkers also cites two cases holding that the inception of bankruptcy proceedings exempts a creditor from state laws requiring the filing of a continuation statement to renew a financing statement reflecting a security interest in the assets of the debtor. *See In re Chaseley's Foods, Inc.*, 30 B.R. 452, 455–58 (N.D.Ind.1983), *aff'd as modified*, 726 F.2d 303 (7th Cir.1983); *In re Funding System Asset Management Corp.*, 38 B.R.

351, 352 (Bankr.W.D.Pa.1984). However, as Checkers itself acknowledges, *see* Brief for Appellant at 23, the courts in these cases did not rest their holdings on section 362(a) of the Bankruptcy Code, but rather relied on the relationship between the policies underlying the state law requirements and the effects of a bankruptcy filing.

express no view as to the merits of these decisions, we find each distinguishable from the present case for the simple reason that each involved a filing necessary to renew a legal action—be it a lien, an assignment of assets, or an attachment of property—operating directly *against the debtor*. Here, by contrast, Checkers's section 8 filing would have operated not to renew or sustain its cancellation petition against CRG—the action *against the debtor*—but, as we have said, merely to maintain the status of its own property.

We recognize that Checkers's filing of a section 8 affidavit could, in some attenuated sense, be deemed necessary to the maintenance of part of Checkers's cancellation petition against CRG. Without a valid federal registration, Checkers might not have had standing to pursue that portion of its cancellation petition claiming injury from CRG's alleged interference with rights guaranteed to Checkers by federal law.[6] However, to acknowledge that the section 8 filing was tangentially related to Checkers's ability to litigate a portion of its claim against CRG is not to bring that filing within the scope of section 362(a). Any construction of section 362(a) that would reach the filing at issue here would extend the power of the bankruptcy courts into a whole host of activities far removed from the concerns addressed by the Bankruptcy Code. For example, under Checkers's construction of the provision, a homeowner involved in an action to quiet title against a debtor in bankruptcy could claim that section 362(a) stayed his payment of property taxes imposed by state law. Such payment certainly is in some sense necessary to the maintenance of good title in the property, and, therefore, could be described as the "continuation" of a claim against the debtor. However, not only does such a sweeping construction of section 362(a) have the potential to raise serious constitutional questions regarding the scope of the jurisdiction that may permissibly be exercised by non-Article III bankruptcy courts, *see Inslaw*, 932 F.2d at 1472–73, but it is not even remotely necessary to the achievement of the provision's twin goals—namely, creating a "breathing spell" for the debtor and preventing a "race of diligence" by creditors. For these reasons, we reject it.

Checkers also seeks to invoke subsection 362(a)(1) in this case by arguing that its filing of a section 8 affidavit continued a claim against the debtor because it prevented CRG from prevailing in its own cancellation claim against Checkers. Checkers points out that the Commissioner's Rules of Practice in Trademark Cases provide for entry of judgment against a respondent in a cancellation proceeding where the respondent allows his or her registration to be canceled pursuant to section 8 while the proceeding is pending. *See* 37 C.F.R. § 2.134(b) (1994).[7] Because Checkers's filing of a section 8 affidavit would have prevented CRG from prevailing under this rule, the filing was stayed, Checkers argues.

■ This contention also lacks merit. Checkers's position amounts to an argument that section 362(a) disabled it from taking any action to fend off CRG's attempts to cancel Checkers's service mark registration. However, it is well settled in this circuit and others that the section 362(a) automatic stay

---

6. To have standing to pursue a cancellation petition, a litigant must demonstrate a "likelihood of damage from the continuing registration of the mark" in dispute. 2 MCCARTHY, *supra*, § 20.13[1]; *see also Golden Gate Salami Co. v. Gulf States Paper Corp.*, 332 F.2d 184, 188 (C.C.P.A.1964) (noting that damage from conflicting trademark and service mark registrations is "not often subject to precise proof") (internal quotations omitted).

7. The provision states in full:
    After the commencement of a cancellation proceeding, if it comes to the attention of the Trademark Trial and Appeal Board that the respondent has permitted his involved registration to be canceled under section 8 of the Act of 1946 or has failed to renew his involved registration under section 9 of the Act of 1946, an order may be issued allowing respondent until a set time, not less than fifteen days, in which to show cause why such cancellation or failure to renew should not be deemed to be the equivalent of a cancellation by request of respondent without the consent of the adverse party and should not result in entry of judgment against respondent as provided by paragraph (a) of this section. In the absence of a showing of good and sufficient cause, judgment may be entered against respondent as provided by paragraph (a) of this section. 37 C.F.R. § 2.134(b).

does not require persons involved in litigation with a debtor to capitulate to the debtor's every demand. *See Inslaw,* 932 F.2d at 1473 ("Fulfillment of th[e] purpose [of the automatic stay] cannot require that every party who acts in resistance to the debtor's view of its rights violates § 362(a) if found in error by the bankruptcy court."); *see also In re Merrick,* 175 B.R. 333, 338 (Bankr. 9th Cir.1994) ("The automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate."); *Martin–Trigona,* 892 F.2d at 577 ("There is . . . no policy of preventing persons whom the bankrupt has sued from protecting their legal rights."). Thus, the fact that Checkers's filing of a section 8 affidavit might have prevented CRG from winning total victory presents no basis for the application of subsection 362(a)(1).

### B. *Subsection 362(a)(3)*

■ Checkers next argues that its filing of a section 8 affidavit was stayed by subsection 362(a)(3), which bars acts to exercise control over property of the bankrupt's estate. As Checkers sees it, by filing an affidavit necessary to maintain its own service mark registration, Checkers would have taken an act to exercise control over the right to use the "Checkers" service mark, in derogation of CRG's own claim to that right. Central to Checkers's theory is the notion that, by virtue of their cross-cancellation claims, Checkers and CRG each were vying for the single and exclusive federal right to use a service mark employing the word "Checkers" in interstate commerce. Thus, in Checkers's view, any act that served to maintain its own claim to that right was an act to "exercise control over" property of the bankrupt's estate within the meaning of subsection 362(a)(3).

Checkers misunderstands the nature of the right created by federal registration under the Lanham Act. We recognize that federal registration constitutes prima facie evidence of the registrant's "*exclusive* right to use the registered mark in commerce." 15 U.S.C. §§ 1057(b), 1115(a) (emphasis added). However, we also note that *each* federal registration constitutes such evidence. In this case,

therefore, the federal registrations of *both* Checkers and CRG constituted prima facie evidence that each enjoyed the exclusive right to utilize its respective service mark in commerce. While the cross-cancellation proceeding might ultimately have established that protection of the rights of one registrant required cancellation of the service mark of the other, each held an independent property right in its own service mark until that decision was made, if ever. Thus, contrary to Checkers's theory, its filing of a section 8 affidavit would have affected only its own property, not the property of CRG. Accordingly, the required filing was not stayed by subsection 362(a)(3).

### C. *Cancellation of a Registration Under Section 8 of the Lanham Act*

■ Because we find that neither subsection 362(a)(1) nor subsection 362(a)(3) stayed Checkers's filing of a section 8 affidavit in this case, we hold that the Commissioner properly canceled Checkers's service mark. In so holding, we recognize that the circumstances of this case do not present the paradigmatic situation that prompted Congress to enact section 8 of the Lanham Act. Congress intended that section "to remove from the register automatically marks which are no longer in use. . Failure of registrants to file affidavits results in removal of such deadwood." *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 887 (C.C.P.A.1969) (emphasis omitted). Nevertheless, in establishing cancellation as the penalty for failure to file the required affidavit, Congress made no exception for the innocent or the negligent. Thus, the Commissioner had no discretion to do other than cancel Checkers's service mark registration in this case. *See In re Mother Tucker's Food Experience (Canada), Inc.,* 925 F.2d 1402, 1405 (Fed.Cir. 1991) ("It was not within the Commissioner's discretionary authority to waive [the section 8] requirement.").

Moreover, while the application of the section 8 filing requirement may appear harsh in this case, Checkers failed to avail itself of a simple means of avoiding this result. Checkers neglected to take the prudential step of seeking clarification from the bank-

ruptcy court, or even from the Commissioner, as to whether its section 8 filing obligation was stayed. Checkers had ample time to make such an inquiry; CRG filed its petition for bankruptcy approximately two months before the first day of the year-long "window" during which Checkers was required to file its section 8 affidavit. By failing to inquire, Checkers assumed the risk that the required filing was not stayed. *See In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985) ("Where there is uncertainty about ... applicability of the automatic stay, a creditor should petition the court for clarification. If the creditor does not, he takes a calculated risk of being held in contempt [for violating the stay]."); *In re Pody*, 42 B.R. 570, 573–74 (Bankr.N.D.Ala.1984) (same). That gamble did not pay off, and accordingly, Checkers's service mark was canceled at the conclusion of the filing period.

### III. Conclusion

For the foregoing reasons, the judgment of the District Court is affirmed.

*So ordered.*