**Sydney E. RAB, Successor Guardian of the Estate of Barry T. Jenkins, and Brian T. Jenkins, Minors, Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Appellee.**

No. 87–1465.

District of Columbia Court of Appeals.

Argued March 2, 1989.

Decided April 5, 1989.

Robert J. Burstein, Washington, D.C., for appellant.

Christopher E. Hassell, Washington, D.C., for appellee.*

---

\* The court thanks both counsel for their excellent briefs and arguments. In preparing this opin-

Before NEWMAN and SCHWELB, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

As a result of a statutory scheme which gives garnishment priority to the creditor who serves his lien first, this is a case in which the fleet, rather than the meek, inherit the earth or so much of its bountiful wealth as is here at issue.

I

This litigation had its inception in a guardianship proceeding entitled *In Re Estate of Barry T. Jenkins and Brian T. Jenkins, minors,* Gdn. No. 89–90 (Super. Ct.D.C.). Eugene E. Jenkins was the guardian of the estate of his two minor sons. The guardianship was created because the children were the beneficiaries of a settlement of a negligence action in the Superior Court. As a condition of his appointment as guardian, Mr. Jenkins was required to file an undertaking with a surety approved by the court in what turned out to be the inadequate amount of $69,500. Jenkins secured the required undertaking from Safeco Insurance Company of America (hereinafter "Safeco").

Jenkins failed to account for his stewardship, and was removed as guardian. Appellant Sydney E. Rab was appointed successor-guardian. The matter was referred to the Auditor–Master for a statement of account. The Auditor–Master found that Jenkins had misappropriated all of the funds of the estate. Most of the funds had been used to pay for construction costs on Jenkins' personal residence. The Auditor–Master determined that the amount for which Jenkins was accountable was $94,353. He recommended that judgment be entered in Rab's favor jointly and severally against Jenkins and Safeco in the amount of $69,500 (the amount of the bond), and that judgment be entered solely against Jenkins for the balance. Judge Barnes en-

ion, the court drew heavily from appellee's brief.

tered judgment approving these findings and recommendations.

After Safeco paid its judgment, it filed a request for entry of judgment against Jenkins pursuant to D.C.Code § 16–4102 (1981). On September 7, 1984, the court entered judgment in favor of Safeco in the amount of $69,500. On September 26, 1984, Safeco obtained a writ of attachment for Jenkins' wages at the United States Postal Service (USPS). The garnishment was served on October 1, 1984. Two days later, Rab also obtained a writ of attachment to satisfy his judgment against Jenkins for the balance owed over the posted security. This writ of attachment was apparently served on USPS on the same day. It was, as events turned out, two days too late.

Because USPS had been served with two writs of attachment, it declined to forward garnishment payments pending the resolution of priorities. Safeco filed a Motion for Judgment of Recovery asking the court to direct USPS to honor Safeco's writ of attachment. Safeco grounded its motion on D.C.Code §§ 16–507 and 16–572 (1981 & 1988 Supp.), which provide that the priority of writs of attachment shall be determined by which attachment is served first. In an Order dated May 23, 1985, the court agreed with Safeco's position and ordered the Postal Service to honor Safeco's garnishment.

For a few months, USPS forwarded garnishment payments to Safeco. Safeco soon encountered a new impediment to the return of at least some part of its money it had been obliged to pay on its bond, however, because on October 18, 1985, Jenkins filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Maryland. By filing his petition, Jenkins secured an automatic stay of all further proceedings against him pursuant to 11 U.S.C. § 362 (1982). By seeking protection in a new forum, Jenkins triggered a kind of "renvoi" between our courthouse at 500 Indiana Avenue, N.W. and the United States Courthouse in Baltimore as counsel for his creditors were compelled to scurry back and forth in their unceasing quest to secure priority for their respective clients' liens. In any event, USPS sent no further garnishment payments to Safeco, apparently preferring to await resolution of the issue and the sheathing of the swords of the embattled warriors.

Safeco contested the dischargeability of its debt in the Bankruptcy Court, asserting that the judgment was based on fraudulent acts by the debtor, and was therefore not dischargeable. On December 2, 1986, two days before trial, the Bankruptcy Court entered a consent order determining the Safeco debt to be nondischargeable pursuant to 11 U.S.C. § 523 (1982). On this occasion, however, Safeco learned that it had no monopoly on trying to win a race to the courthouse door or to the clerk's office (or perhaps to the purported bankrupt). Unbeknownst to Safeco, Jenkins had agreed a month earlier to the entry of a consent order declaring his debt to Rab to be nondischargeable. In the interim, between the entry of his consent order and the one entered in favor of Safeco, Rab had secured and served a new writ of attachment for Jenkins' wages.

Armed with its nondischargeable debt order, Safeco filed a motion in the Superior Court to lift the stay and to direct payment from the garnishee. Rab opposed this motion, contending that his writ of attachment now had priority. The Superior Court denied Safeco's motion for lack of jurisdiction, holding that only the Bankruptcy Court could lift the stay, and that the consent order declaring the debt to be nondischargeable did not automatically do so.

Initially, both Safeco and Rab returned to the Bankruptcy Court and filed motions for partial lifting of the stay. The Bankruptcy Court granted each motion. Rab then secured and served a third writ of attachment on USPS.

Once again exacerbating the traffic on I-95 or the Baltimore–Washington Parkway, Safeco returned to the Superior Court and filed a motion requesting the court to compel USPS to resume the garnishment payments. Rab again opposed the motion, contending that either the second or third

writ of attachment had priority. The Honorable Iraline G. Barnes held that the provisions of 11 U.S.C. § 362 operated only as a stay, and that once the stay was lifted, Safeco's writ had priority pursuant to D.C. Code § 16–572 since it was the first to be served. Rab's appeal followed.

## II

To decide this appeal, we must determine the effect of the automatic stay provision of the federal Bankruptcy Act, 11 U.S.C. § 362, on the District of Columbia Attachment and Garnishment of Wages Statute (D.C.Code §§ 16–571 to 584 (1982 & 1988 Supp.)). It is a question of first impression.

Section 16–572 provides that a judgment creditor may attach the wages of a debtor to the extent of twenty-five per cent of his disposable wages by serving a writ of attachment on the employer. Once the attachment has been served,

> [t]he levy shall be a *continuing levy* until the judgment, interest, and costs thereof are fully satisfied and paid, and in no event may moneys be withheld, by the employer-garnishee from the judgment debtor, in amounts greater than those prescribed by this section. Only one attachment upon the wages of a judgment debtor may be satisfied at one time. Where more than one attachment is issued upon the wages of the same judgment debtor and served upon the same employer-garnishee, *the attachment first delivered to the marshal shall have priority, and all subsequent attachments shall be satisfied in the order of priority set forth in section 16–507.*

(Emphasis added.) It is undisputed that Safeco was first to have its attachment served on USPS and would, in the ordinary course of events, be entitled to priority.[1] Rab concedes that if Jenkins had not filed for bankruptcy on October 18, 1985, the priority rule of D.C.Code § 16–572 would control. In other words, it is undisputed

that but for Jenkins having filed a petition for bankruptcy, Safeco would have been entitled to a "continuing levy [on Jenkins' wages] until the judgment, interest, and costs thereof are fully satisfied and paid." D.C.Code § 16–572. "The statute provides for a continuing levy upon a judgment debtor's wages until judgment is satisfied or until the judgment debtor resigns or is dismissed and is not reemployed within ninety days, in which case the attachment will lapse." *Household Finance Corp. v. Training Research and Development, Inc.,* 316 A.2d 850, 851–52 (D.C.1974).

The parties' agreement as to the proper outcome, however, ends with the filing by Jenkins of a voluntary petition in bankruptcy. In particular, they disagree as to the consequences of the automatic stay provision of 11 U.S.C. § 362, which states, in pertinent part, that

> [A] petition filed under section 301, 302, 303, of this title ... operates as a stay, applicable to all entries, of
>
> \*    \*.    \*    \*    \*    \*
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title....

The positions of the parties, though differing, are straightforward. Rab contends that the automatic stay acts to extinguish all previously issued writs of attachment. For those debts later found to be nondischargeable, Rab argues that attachment priorities are to be determined by which attachment is served first *after* the debt has been determined to be nondischargeable by the Bankruptcy Court. Safeco's position is that the automatic stay acts as a freezing of the status quo. Attachment priority for nondischargeable debts is to be determined by the language of § 16–572; the attachment served first, *regardless of whether it was before or after the bankruptcy petition,* is entitled to priority. To

---

1. The United States Marshals Service no longer serves writs of attachment. Therefore, both Rab and Safeco appropriately had their attachments served by private process server. In an order dated May 23, 1985, the court found that since Safeco had its writ of attachment served first it would be entitled to priority over Rab. Rab has not noted an appeal from this ruling, which is therefore *res judicata. See Hamilton v. Needham,* 519 A.2d 172, 176–77 (D.C.1987).

put it more concisely, the parties disagree on the meaning of the word "stay" as used in 11 U.S.C. § 362 and they ask this court to construe the effect of such a stay on pre-existing writs of attachment.

We do not find this question to be a difficult one. The first step in statutory construction is to read the language of the statute and to construe its words according to their ordinary sense and plain meaning. *United States v. Baily,* 495 A.2d 756, 760 (D.C.1985). Section 362 is entitled "Automatic Stay." It states that a bankruptcy petition "operates as a stay" of all proceedings of enforcement against the debtor. Black's Law Dictionary (5th ed. 1979) defines "stay" as follows:

A stopping; the act of arresting a judicial proceeding by the order of a court. Also that which holds, restrains, or supports.

A stay is a suspension of the case or some designated proceedings within it. . . .

Moreover, Black's defines "stay of proceedings" and "stay order," respectively, as follows:

The *temporary suspension* of the regular order of proceedings in a cause, by direction or order of the court.

\* \* \* \* \* \*

A stopping; the act of arresting a judicial proceeding by the order of a court or the *temporary suspension* of the regular order of proceedings in a cause by direction or order of the court.

(Emphasis added.)

Undeniably, § 362 requires the immediate cessation of payments to the garnishor. *See, e.g., In re Rutty,* 39 B.R. 204, 206 (Bankr.S.D.N.Y.1984). The issue is whether the stay does more than that. Is it only a stopping of payments, or is it also an extinguishment of all attachments? The answer is found in the ordinary and plain meaning of the word stay. It means a stopping or freezing, not extinguishment or eradication.

The legislative history of § 362 confirms that section's plain meaning. It discloses a congressional intent to stay proceedings against the debtor, and no other, *to preserve the status quo* of the estate in an effort to ultimately effect and implement, to the extent possible, a successful and equitable reorganization or liquidation. *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1197 (6th Cir.1983) (emphasis added). Put more succinctly, "the purpose of the automatic stay in bankruptcy is to preserve the status quo as of the date of the commencement of bankruptcy proceedings." *Cardinal Federal Savings & Loans Ass'n v. Flugum,* 10 Ohio App.3d 243, 245, 461 N.E.2d 932, 934 (1983) [citing, *inter alia, In re Miller,* 10 B.R. 778, 780 (Bankr.D.Md.1981)]. It "freeze[s] the debtor's financial relationships and conditions at the date of the petition." *In re Bennett,* 29 B.R. 380, 381 (W.D.Mich.1981).

The Bankruptcy Act makes the stay effective with the simple filing of a petition. *See generally, In re Willis,* 2 B.R. 643, 645 (Bankr.W.D.Va.1980). Thus, the stay comes into force even though the petitioner, as in this case, may not be entitled to the protection of the Bankruptcy Act, or may have debts which are nondischargeable. Through § 362, Congress intended to bring a temporary halt to all proceedings against the debtor to permit the Bankruptcy Court to make an orderly determination as to whether the bankrupt and all his debts are entitled to the protection of the federal bankruptcy laws. If they are, then the court is to implement an equitable reorganization or liquidation.

We cannot believe that Congress intended to empower the debtor to "radically alter" creditors' standing against him simply by filing a petition. *See In Re Stivers,* 31 B.R. 735, 737 (Bankr.N.D.Cal.1983) ("the automatic stay . . . gives junior lienholders and other parties interested in the property affected by the automatic stay no substantive or procedural rights").[2] If the debtor

---

**2.** Indeed, the idea that the debtor can "radically alter" his debt situation by merely filing a petition in bankruptcy (even though the petition

may lack merit) is fraught with danger. It opens wide the door for collusion between the debtor and a favored creditor. *The present case*

is entitled to bankruptcy protection, then indeed the situation may be radically altered through a discharge plan or reorganization. But this can occur only after the Bankruptcy Court has made a determination as to the validity of his claim of bankruptcy. If the Bankruptcy Court determines that the debtor is not entitled to the protection of the Bankruptcy Act, then the parties should be returned to the "position in which they were found at the commencement of [the] case." *In Re Weathersfield Farms, Inc.*, 34 B.R. 435, 439 (Bankr.D.Vt. 1983). It is as though the debtor had never filed a petition for bankruptcy since the bankruptcy laws were not valid against the affected creditor's claims. *Cf. In re Linton*, 35 B.R. 695, 697 (Bankr.D.Idaho, 1983).

> An order which lifts the automatic stay returns the parties to the legal relationships that existed before the stay became operative. Whatever nonbankruptcy law governed the transactions and relationships of the parties prior to the application of the Bankruptcy Code is the law which controls the conduct of the parties once the stay is lifted.

*In re Winslow*, 39 B.R. 869, 871 (Bankr.N. D.Ga.1984).

In the present case, after Jenkins filed the petition for bankruptcy, it was determined that both the Rab and Safeco debts were nondischargeable. Although Jenkins was temporarily entitled to the protection of the automatic stay of § 362 simply because he had filed a voluntary petition, the court later found that he was not entitled to the protection of the bankruptcy laws for these debts. The case should be treated as though Jenkins had never filed the bankruptcy petition as far as these debts are concerned.

Accordingly, under the statutory scheme, the situation with regard to the relative priority of the parties' liens is today exactly as it was in October of 1985. There are two valid judgments outstanding. Attachments have been issued on both, but Safeco's was served first. The unambiguous language of D.C.Code § 16–572 dictates that Safeco's attachment must be accorded priority.

We therefore agree with Judge Barnes that, once Safeco had secured its consent judgment in the Bankruptcy Court, it was entitled to the priority over Rab's claim which it had obtained by initially filing first. Accordingly, the judgment appealed from is hereby

*Affirmed.*[3]

---

serves as an excellent example. Mr. Jenkins would understandably wish Rab to have priority over Safeco, so that the garnishment funds will go into his sons' estate.

**3.** Rab also argues that his garnishment is entitled to priority because Safeco has failed to comply with Super.Ct.Civ.R. 69–II, requiring the prompt mailing by the enforcing creditor of a receipt to a garnishee upon receipt of payment. This argument was not raised below and this court need not reach it. *See Williams v. Gerstenfeld*, 514 A.2d 1172, 1177 (D.C.1986). In any event, the Rule is discretionary and Rab's counsel conceded at oral argument that he could show no injury from its alleged violation.