**Charles S. PEARE, Appellant,**

v.

**Delores JACKSON, Appellee.**

**No. 99–FM–373.**

District of Columbia Court of Appeals.

Argued June 28, 2001.

Decided Aug. 2, 2001.

---

GLICKMAN, Associate Judge.

The Superior Court found Charles S. Peare in civil contempt for his failure to make court-ordered support payments pendente lite to his wife Delores Jackson. In his pro se appeal from that judgment, Peare claims, *inter alia*, that he had filed a bankruptcy petition and was under what he calls the "blanket protection" of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (1994 & Supp. V 1999). Despite the overbreadth of this claim, as Peare articulates it, there is enough merit in it to entitle him to relief. Although a bankruptcy filing does not stay an action to establish a right to support or to collect support from property outside the debtor's estate, Peare's filing of a petition under Chapter 13 of the Bankruptcy Code should have stayed his contempt adjudication, because that adjudication was calculated to compel him to pay support from sources encompassed within the debtor's estate. We vacate the order holding Peare in contempt and remand for further proceedings. In so doing, we do not reach Peare's other claims of error.

Charles S. Peare, pro se.

Roy L. Pearson, Jr., with whom Vanita A. Snow was on the brief, for appellee.

Before TERRY and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

I.

Peare married Jackson in 1990.[1] After living together for eight years, they separated, and in August 1998 Jackson filed a complaint for legal separation and a motion for an award of spousal support pendente lite.

---

1. Peare contends that his marriage to Jackson was null and void because it took place before Jackson's divorce from her previous husband became final. *See* D.C.Code §§ 16–920 (1997) (divorce decree not effective until the time for noting an appeal has expired) and 30–101 (1998) (remarriage of person whose previous marriage has not been terminated by death or decree of divorce is "absolutely void ab initio"). Jackson rejoins that her marital union with Peare became lawful when they continued to live together as husband and wife after her decree of divorce from her previous husband took effect, citing *Matthews v. Britton*, 112 U.S.App.D.C. 397, 398–99, 303 F.2d 408, 409–410 (1962). In view of our conclusion that Peare's contempt adjudication was void and must be vacated for other reasons, which resolves this appeal, we express no views on the issue of the legality of Peare's marriage to Jackson.

While Jackson's motion for support was still pending, Peare filed a Chapter 13 bankruptcy petition. The hearing on the support motion nonetheless went forward, the court having concluded that the proceeding was excluded by statute from the operation of the automatic stay that was triggered by the petition. At the close of the evidence, on November 4, 1998, the court granted pendente lite support, ordering Peare to pay Jackson $1,200 per month.

A few weeks later, Peare voluntarily dismissed his bankruptcy petition. Thereafter, Jackson moved to hold Peare in contempt for failing to comply with the order that he pay pendente lite support. The hearing on that motion commenced on January 27, 1999, and was continued to February 25, 1999.

In the interim, on February 8, 1999, Peare filed a second petition under Chapter 13 of the Bankruptcy Code. It is unclear from the sketchy record before us on appeal whether Peare's renewed bankruptcy filing was brought to the attention of the court when the contempt hearing was resumed on February 25.[2] At that hearing, however, the court proceeded to find Peare in contempt and ordered him committed to the District of Columbia Jail for a period of thirty days "or until such earlier time as he shall purge himself of his contempt by paying" his arrearage to Jackson. The court stayed execution of its order of commitment to April 1, 1999, on condition that Peare pay Jackson $150 per week until such time as he provided her with housing in lieu of that cash payment. *Id.*

Peare noted an appeal, and on April 1 the trial court—apprised of the appeal and also, by this time, of Peare's bankruptcy filing[3]—continued its stay of execution until remand from this court. Peare's bankruptcy filing was subsequently converted to a Chapter 7 petition, and in August 1999, Peare was released from all of his dischargeable debts pursuant to 11 U.S.C. § 523 (1994 & Supp. V 1999).

## II.

With limited exceptions, the filing of a bankruptcy petition operates as an immediate and automatic stay, "applicable to all entities," of all litigation against the debtor. 11 U.S.C. § 362(a). Among other things, the stay bars efforts to enforce a prior judgment against the debtor, *see* 11 U.S.C. § 362(a)(2), or to recover a pre-existing debt, *see* 11 U.S.C. § 362(a)(6). The stay remains in effect until the bankruptcy court lifts it, *see* 11 U.S.C. § 362(d)-(f), or the bankruptcy case ends. "[O]ne of the fundamental debtor protections provided by the bankruptcy laws," the automatic stay

> gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97. "The automatic stay also protects creditors by averting a scramble for the debtor's assets and promoting instead 'an orderly liquidation procedure under which all creditors

---

2. According to appellee's brief, a transcript of the February 25 hearing is not available because no tape recording was made.

3. At the April 1 hearing, which Peare did not attend, Jackson's counsel mentioned Peare's bankruptcy, though he also expressed uncertainty as to whether Peare "actually has a bankruptcy pending."

are treated equally.' " *Farley v. Henson*, 2 F.3d 273, 275 (8th Cir.1993) (quoting H.R.Rep. No. 595, *supra*, at 340).

■ Judicial actions taken in violation of the automatic stay are generally held to be void and without effect. *See, e.g., Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir.2001); *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 995 (9th Cir.2001); *In re Soares*, 107 F.3d 969, 976 (1st Cir.1997); *In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989); 1 LAWRENCE P. KING ET AL., COLLIER BANKRUPTCY MANUAL ¶ 362.11[1] (3d ed. rev.2001). Such actions are void "even if the creditor had no notice of the stay." *Smith, supra*. The provenance of this rule extends back at least to the decision of the Supreme Court in *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (holding that under prior law, post-petition action by state court was "not merely erroneous but ... beyond its power, void, and subject to collateral attack"). Some courts—a minority—hold that, strictly speaking, an action in violation of the automatic stay is not void *ab initio*, but rather is merely voidable at the behest of the debtor. The point of this distinction is that if an action is merely voidable, the violation of the automatic stay is potentially curable via retroactive ratification if special circumstances warrant, as for instance where the debtor conceals the fact of his bankruptcy filing and unreasonably delays his invocation of the stay. *See, e.g., Bronson v. United States*, 46 F.3d 1573, 1577–78 (Fed.Cir.1995); *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir.1993); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989). In this case, however, as in most cases, the distinction between "void" and "voidable" is of no moment. Either way, an action that contravenes the automatic stay "shall be voided absent limited equitable circumstances" that simply are not present here. *See Easley*, 990 F.2d at 911.

As set forth in 11 U.S.C. § 362(b), there are some exceptions to the operation of the automatic stay. In general, the stay has limited applicability to domestic relations proceedings. *See* Jeffrey H. Gallet & Robert Z. Debrish, *The Bankruptcy Automatic Stay: It's Not the End of the World—or of the Case*, 16 J. ACAD. MATRIMONIAL LAW. 149 (1999).[4] In particular, the filing of a bankruptcy petition does not stay proceedings for "the establishment or modification of an order for alimony, maintenance, or support," 11 U.S.C. § 362(b)(2)(A)(ii), or "the collection of alimony, maintenance, or support from property that is not property of the estate," 11 U.S.C. § 362(b)(2)(B). These exceptions reflect the fact that a principal purpose of the automatic stay is to protect the debtor's discharge, and alimony, maintenance and support obligations are excepted from discharge in bankruptcy by 11 U.S.C. § 523(a)(5). *See* H.R.Rep. No. 595, *supra*, at 342.

Because proceedings to establish an order for support are not stayed, the Superior Court properly went ahead with the November 1998 hearing on Jackson's motion for pendente lite support despite the filing of Peare's first bankruptcy petition. The November 4, 1998, order that Peare pay such support did not violate the automatic stay. *See, e.g., In re Campbell*, 185 B.R. 628, 630 (Bankr.S.D.Fla.1995).

---

**4.** As Gallet and Debrish state:
Matrimonial proceedings are an exception to the rule that the filing of a bankruptcy proceeding stops related state court litigation. Except for the distribution of marital property, virtually everything else continues in the state court. Family law jurisdiction remains with the states.
16 J. ACAD. MATRIMONIAL LAW at 160.

■ The February 1999 contempt hearing, held when Peare's second bankruptcy petition was pending, is a different matter. In allowing Peare to purge his contempt and avoid imprisonment by paying his arrearage to Jackson, the adjudication of contempt was designed to coerce compliance with the court's pendente lite support order.[5] The contempt nonetheless did not come within the exception to the automatic stay in 11 U.S.C. § 362(b)(2)(B) for collection of support, because it was not targeted to compel payment "from property that is not property of the estate." On the contrary, because Peare was a Chapter 13 debtor at the time of the contempt hearing, rather than a Chapter 7 debtor, it is not likely that he had any property outside the bankruptcy estate from which he could make support payments. The term "property of the estate" generally encompasses all of the debtor's property as of the date of commencement of the bankruptcy. *See* 11 U.S.C. § 541. In a Chapter 13 case, "property of the estate" also includes the debtor's post-petition earnings, because the Chapter 13 debtor may be undertaking to use such earnings to reorganize and pay his creditors. *See* 11 U.S.C. § 1306(a). For this reason, it has been noted, "the exception in 11 U.S.C. § 362(b)(2) has little or no practical effect in Chapter 13 situations." *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir.1992).

As the exception in 11 U.S.C. § 362(b)(2) was not available, 11 U .S.C. § 362(a) operated to stay the proceeding to hold Peare in civil contempt for not making his support payments. *See id.; In re Newman*, 196 B.R. 700, 704 (Bankr.S.D.N.Y. 1996) ("actions for civil contempt are considered private collection devices and within the ambit of the automatic stay"). *See also* Gallet & Debrish, *supra*, at 154–57. Jackson's proper remedy when confronted with the automatic stay was to apply for relief from the stay in the bankruptcy court pursuant to 11 U.S.C. § 362(d) before going ahead with the contempt hearing. *See Carver*, 954 F.2d at 1578 (noting that "[w]hen requested, such relief should be liberally granted in situations involving alimony, maintenance, or support"); *accord, Newman*, 196 B.R. at 703.

As Jackson did not obtain an order from the bankruptcy court modifying or lifting the stay, the contempt adjudication violated the automatic stay and was void. We vacate the Superior Court's order holding Peare in contempt and remand for further proceedings.

*So ordered.*

■

---

**5.** The contempt proceeding was thus civil rather than criminal in nature. *See International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony") (internal quotation marks and citation omitted). *See also Link v. District of Columbia*, 650 A.2d 929, 931 (D.C.1994); *Hackes v. Hackes*, 446 A.2d 396, 400 (D.C.1982) (civil contempt as appro-

priate sanction for failure to pay pendente lite alimony per court order). The provision in 11 U.S.C. § 362(b)(1) that excludes criminal actions—including criminal contempt proceedings—from the operation of the automatic stay is therefore not applicable to this case. *See, e.g., In re Maloney*, 204 B.R. 671, 674 (Bankr.E.D.N.Y.1996) .("Courts consistently have held that civil contempt orders fall within the scope of the automatic stay under section 362(a) of the Bankruptcy Code, but that criminal contempt orders do not.")