Kelsey A. JONES, Appellant,

v.

Courtney L. CAIN, Appellee.

No. 95–CV–1394.

District of Columbia Court of Appeals.

Argued June 30, 1999.

Decided Aug. 8, 2002.

Brian K. Flowers, Washington, DC, for appellant.

J. Thomas Giunta for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

TERRY, Associate Judge:

According to appellee Courtney Cain, appellant Kelsey Jones evicted him from the house he and his wife had rented from Dr. Jones. Mr. Cain alleged that Dr. Jones locked him out of the house, then disposed of several items of personal property he had left inside the house. Dr. Jones claimed that Mr. Cain had voluntarily abandoned the premises and that nothing of value was left there. After a two-day trial, the jury found Mr. Cain's evidence more credible and awarded him $10,000 in compensatory damages and $2,000 in punitive damages. The court entered judgment on the verdict. Dr. Jones contends on appeal that the trial court erred in several respects: (1) it abused its discretion when it denied his motion for a continuance; (2) it improperly excluded certain exhibits which he sought to introduce into evidence; and (3) it incorrectly instructed the jury on the law of abandonment. We find each of these arguments meritless.

We nevertheless hold that the judgment is void pursuant to the automatic stay provision of federal bankruptcy law, 11 U.S.C. § 362(a)(1) (1994), because Dr. Jones filed a petition for bankruptcy several months before the case was first scheduled for trial, thereby triggering the automatic stay. Although Dr. Jones never informed the court or Mr. Cain of the bankruptcy filing until almost a month after the judgment was entered against him, the judgment violates the stay and thus is necessarily void. We therefore vacate the trial court's judgment. However, we do so without prejudice, thus enabling Mr. Cain to petition the bankruptcy court to annul the stay retroactively and have the judgment reinstated.

## I

In December 1990 Courtney and Estelle Cain lived in a house on Clay Street, Northeast. Mrs. Cain alone had rented the home from its owner, Dr. Jones. Although Mr. Cain's name was not on the lease, Dr. Jones was aware that he lived in the house and did not object to his being there. A few days before Christmas, however, Mrs. Cain moved out of the house as a result of marital difficulties. Dr. Jones then locked Mr. Cain out of the house on December 24 and subsequently disposed of the personal property that was left inside.

At trial Dr. Jones raised an abandonment defense. He claimed that the house had been rented to Mrs. Cain and that, when the couple separated, Mr. Cain abandoned what had been the marital home. Dr. Jones also maintained that he did not lock Mr. Cain out of the house and could not have done so because his mother had died on December 22, and he was preoccupied with making arrangements for her funeral at the time of the alleged eviction. The parties stipulated that Dr. Jones was in Memphis, Tennessee, from December 27 through December 29, attending his mother's funeral.

Mr. and Mrs. Cain filed this suit on June 26, 1991, asserting a claim for wrongful eviction against Dr. Jones and KAJ Associates, Inc., the corporation in whose name Dr. Jones rented the house to the Cains. Initially, in March 1992, Mr. Cain obtained a default judgment against Dr. Jones and KAJ Associates. That judgment, however, was later vacated, and trial was scheduled to begin on December 6, 1993.

On June 4, 1993, Dr. Jones filed a petition for bankruptcy in the United States Bankruptcy Court, thereby triggering the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a) (1994). Although he was represented by counsel at the time, neither Jones nor his attorney informed the trial court of the bankruptcy filing. On November 8 the court continued the December 6 trial date at the request of Mr. Cain. Less than a month later, Dr. Jones' attorney filed a motion to withdraw as counsel for Dr. Jones and KAJ. Despite Dr. Jones' opposition, the court granted the motion on February 18, 1994. Dr. Jones thereafter appeared *pro se* at a pretrial conference and unsuccessfully moved for summary judgment.

On September 5, 1995, the day that the trial was finally set to begin, a new attorney entered an appearance as *pro bono* counsel for Dr. Jones and asked for a continuance to prepare for trial. The judge denied counsel's request, explaining, "We do not grant continuances on the day of trial, and certainly do not grant continuances without motions. And the fact that counsel has just been retained in the eleventh hour is certainly not grounds." The trial then began, and at its conclusion the jury returned a verdict for Mr. Cain, awarding him $10,000 in compensatory damages and $2,000 in punitive damages.

The court entered judgment on that verdict.

On October 6 Dr. Jones, through counsel, filed both a timely notice of appeal and a motion to stay the judgment based on the bankruptcy petition Jones had filed more than two years earlier. This was the first time that the court and Mr. Cain were made aware of the bankruptcy proceedings. The motion was granted, and the judgment was stayed, as was the present appeal, until the bankruptcy petition was dismissed. *See Ellison v. Northwest Engineering Co.,* 707 F.2d 1310, 1311 (11th Cir.1983) (automatic stay applies to appeals); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3d Cir.1982) (same). The stay was then lifted, and the appeal proceeded to briefing and oral argument.

## II

■ We begin our discussion with the matter of the bankruptcy stay, since it is dispositive of the case. The automatic stay provision of the federal bankruptcy code, 11 U.S.C. § 362(a), is " 'one of the fundamental debtor protections provided by the bankruptcy laws.' " *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 95–989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840; H.R.Rep. No. 95–595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296); *accord, e.g., In re Soares,* 107 F.3d 969, 975 (1st Cir.1997). Section 362(a) provides, in pertinent part:

[A] petition filed under [the Bankruptcy Act] ... operates as a stay, applicable to all entities, of ... the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Act].

11 U.S.C. § 362(a)(1). The automatic stay gives the debtor a breathing spell from his creditors by stopping collection efforts, harassment, and foreclosure actions, and protects creditors by providing for an orderly liquidation of the debtor's assets. *See Checkers Drive–In Restaurants, Inc. v. Commissioner of Patents & Trademarks,* 311 U.S.App. D.C. 188, 192, 51 F.3d 1078, 1082, *cert. denied,* 516 U.S. 866, 116 S.Ct. 182, 133 L.Ed.2d 120 (1995); S.Rep. No. 95–989, at 54–55, *reprinted in* 1978 U.S.C.C.A.N. at 5840–41; H.R. Rep. No. 95–595, at 340, *reprinted in* 1978 U.S.C.C.A.N. at 6296–97. "To effectuate these congressional purposes, section 362(a) generally must be construed broadly." *Checkers Drive In,* 311 U .S.App. D.C. at 192, 51 F.3d at 1082 (citations omitted); *see Midlantic Nat'l Bank,* 474 U.S. at 504, 106 S.Ct. 755 ("in enacting § 362 in 1978, Congress significantly broadened the scope of the automatic stay"); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990); *Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n,* 804 F.2d 1487, 1491 (9th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *McDonell v. Eggestein,* 357 N.W.2d 168, 170 (Minn.Ct.App. 1984). Thus, as the statutory language directs, "[t]he filing of a bankruptcy petition acts as an automatic stay of all judicial proceedings pending against the debtor." *Corto v. National Scenery Studios, Inc.,* 705 A.2d 615, 620 (D.C.1997); *accord, Peare v. Jackson,* 777 A.2d 822, 824 (D.C. 2001). The stay "extends to virtually all formal and informal actions against property of the bankrupt estate." *In re Smith,* 876 F.2d 524, 525–526 (6th Cir.1989). It "remains in effect until the bankruptcy court lifts it ... or the bankruptcy case

ends." *Peare,* 777 A.2d at 824 (citation omitted).

■ Mr. Cain attempts to avoid the broad reach of the automatic stay provision by arguing that the property at issue was not Dr. Jones' property and therefore not part of the bankrupt estate. Cain claims that because the automatic stay is designed to preserve the remainder of the debtor's insolvent estate and to prevent a scramble for the debtor's assets, an action which involves only property that does not belong to the debtor "is neither connected with nor interfering with the bankruptcy proceeding" and therefore should not be affected by the stay. *See In re Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982). We are not persuaded.

■ The breadth of the automatic stay, while not unlimited, *see Checkers Drive–In,* 311 U.S.App. D.C. at 192, 51 F.3d at 1082, surely extends to actions for conversion in which ownership of the allegedly converted property is at issue. Furthermore, in this case Cain demanded more than merely the return of his property. He sought (and obtained) damages for the value of the possessions he left in the house, as well as compensatory and punitive damages for wrongful eviction. Even if this case were limited to the personal property that was left in the house, we would be reluctant to determine the scope of the stay because such determinations are generally entrusted to the bankruptcy court. *See Powell v. Washington Land Co.,* 684 A.2d 769, 774 (D.C.1996) (Schwelb, J. concurring); *see also In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 430–431 (2d Cir.1987) (notice of termination of lease affected sublease and therefore violated automatic stay), *cert. denied,* 485 U.S.

1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988).

■ We are also unpersuaded by Mr. Cain's argument that the automatic stay should not apply to this case because Dr. Jones did not inform the court or Cain, either before or during the trial, that he had filed for bankruptcy. As its name suggests,[1] the stay operates automatically without notice and without judicial intervention. *Sunshine Development, Inc. v. FDIC,* 33 F.3d 106, 113 (1st Cir.1994). "The Bankruptcy Act makes the stay effective with the simple filing of a [bankruptcy] petition.... Thus, the stay comes into force even though the petitioner, as in this case, may not be entitled to the protection of the Bankruptcy Act, or may have debts which are nondischargeable." *Rab v. Safeco Insurance Co.,* 556 A.2d 1072 (D.C.1989); *see also Saeedi v. Greyhound Lines, Inc.,* 652 A.2d 638, 640 (D.C. 1995); *In re Soares,* 107 F.3d at 975 ("The stay springs into being immediately upon the filing of a bankruptcy petition"); *In re Calder,* 907 F.2d at 956 (the stay is effective "even where there is no actual notice of the existence of the stay"); *In re Smith,* 876 F.2d at 526 ("Actions taken in violation of the automatic stay generally are void, even if the creditor had no notice of the stay" (citations omitted)).

■ In this case, after Dr. Jones filed his petition for bankruptcy on June 4, 1993, the automatic stay was in effect until the bankruptcy case was dismissed, and that did not happen until after the judgment was entered against him. Thus the judgment in favor of Mr. Cain violated section 362. Generally, when a judgment is entered in violation of the automatic stay, it is void and without effect. *Kalb v.*

---

1. The caption of section 362, as it appears in the United States Code, reads "Automatic stay."

*Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re Soares,* 107 F.3d at 976; *In re Schwartz,* 954 F.2d 569, 573 (9th Cir.1992); *In re Calder,* 907 F.2d at 956; *In re Smith,* 876 F.2d at 526; *In re 48th Street Steakhouse,* 835 F.2d at 431; *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *McDonell,* 357 N.W.2d at 170 ("Action in contravention to section 362 is null and void").

When equity demands, courts have made exceptions to that general rule, but such instances are rare. For example, in *Corto v. National Scenery Studios,* this court refused to allow the appellant even to seek such an exception, ruling that she was estopped from asserting violations of the automatic stay to challenge the validity of judicial proceedings. We based our decision on the bankruptcy court's finding that "Corto's bankruptcy petitions were filed 'for the sole purpose of preventing trial from going forward' ... and [that] the involuntary petition filed by her mother and son was 'collusive and in bad faith.'" 705 A.2d at 620. We also noted that "the bankruptcy court subsequently lifted, as to [National Scenery Studios, the appellee], the automatic stay created by the involuntary bankruptcy petition against Corto *nunc pro tunc* to January 13, 1992 [the date of the involuntary filing], and declared that any actions taken by the trial court since October 4, 1991 [the date that Corto's third bankruptcy petition was filed], were unaffected by any bankruptcy stay." *Id.*

In *In re Calder* the debtor was an experienced attorney practicing exclusively in bankruptcy law. After he filed for bankruptcy and the automatic stay went into effect, he continued to litigate a case in a state court involving one of his creditors without notifying the opposing party or the court of the stay. Then, just as the court was preparing to enter a judgment against him, the debtor raised the shield of the stay. The court nevertheless entered the judgment. After further proceedings in the bankruptcy court, the Tenth Circuit held:

> [I]t would be inequitable to allow Calder to claim any protections of the automatic stay under section 362(a) to defeat the [plaintiffs'] state court judgment.... Calder's only explanation, that he forgot, is not a legitimate excuse for his delay. To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court would be inconsistent with the underlying purpose of the automatic stay, which is to give a debtor "a breathing spell from his creditors."

907 F.2d at 956–957 (citations and footnote omitted).

In *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982), the debtor filed a bankruptcy petition without the creditor's knowledge. The debtor then said nothing while the creditor, still without knowledge of the bankruptcy petition, obtained a default judgment from a state court. The debtor's agent also silently watched as a constable, executing the default judgment, removed the debtor's property from a warehouse and took it to the creditor's warehouse. Thereafter the debtor notified the creditor of the stay and sued for conversion. The court held that it would be inequitable to allow the debtor to assert the protections of the automatic stay after remaining "stealthily silent" during the creditor's proceedings against it. *Id.* at 976–977.[2]

---

2. *See also Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984) (applying equitable doctrine of laches when debtor unreasonably and inexcusably delayed in asserting claim against

In this case, Mr. Cain did not know that Dr. Jones had filed for bankruptcy and that an automatic stay was in effect, and Dr. Jones continued to litigate the case without notifying the trial court and Cain of either the filing or the stay. However, unlike the debtor in *Calder*, Jones is not a bankruptcy attorney well versed in the application of automatic stays. He represented himself during most of the proceedings below. While his status as a *pro se* litigant generally will not entitle him to special treatment from the courts, *see Abell v. Wang*, 697 A.2d 796, 804–805 (D.C.1997), it also cannot serve alone as the basis for a finding of bad faith. "Since the evidence does not suggest that [Jones] attempted to exploit the stay to obtain an unfair advantage—or that [Jones'] delay in notifying [Cain or the court] was willful rather than merely careless—equity does not compel the exception to the stay sought by [Cain] in this case." *In re Smith*, 876 F.2d at 527.

A minority of the federal courts have held that judgments obtained in violation of the stay are voidable rather than void. *See Bronson v. United States*, 46 F.3d 1573, 1577 (Fed.Cir.1995) (noting circuit split and concluding that actions taken in violation of stay are voidable); *In re Jones*, 63 F.3d 411 (4th Cir.1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996); *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909–911 (6th Cir.1993); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178–179 (5th Cir.1989). As the basis for their reading of the statute, these courts have most often relied on 11 U.S.C. § 362(d), which gives to bankruptcy courts the power to grant relief from an automatic stay "by terminating, annulling, modifying, or conditioning" the stay.[3] *See Bronson*, 46 F.3d at 1578. They conclude that "[t]he word 'annulling' in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating,' would be superfluous." *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *accord, Sikes*, 881 F.2d at 178; *Easley*, 990 F.2d at 909–910. In other words, "[t]he power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay." *Sikes*, 881 F.2d at 178. These courts that follow the minority rule reason "that it is inaccurate and overly broad to characterize every violation of § 362 as being absolutely void." *Bronson*, 46 F.3d at 1578; *accord, Sikes*, 881 F.2d at 178; *see also Easley*, 990 F.2d at 909 (concluding that "invalid" is the term that should be applied because "something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified").

This distinction in terminology strikes us as somewhat academic. *See Easley*, 990 F.2d at 909 (discussing the difference between void and voidable). Nevertheless:

[t]his semantic difference has practical consequences because the characterization of an infringing action as "void" or "voidable" influences the burden of going forward. Treating an action taken in contravention of the automatic stay as void places the burden of validating the

---

state court jurisdiction); *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994).

**3.** Section 362(d) provides, in pertinent part:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor.... [T]he former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves.

*In re Soares,* 107 F.3d at 976; *see* 1 COLLIER BANKRUPTCY MANUAL ¶ 362.11[1] (3d ed.1996). We find the cases that follow the majority rule to be more persuasive, and thus we join the majority of courts in holding that actions taken in violation of the automatic stay are void. "The power to grant relief, even retroactively, simply does not mean that violation of the stay must be merely voidable rather than void.... It is entirely consistent to reason that, absent affirmative relief from the bankruptcy court, violations of the stay are void." *In re Schwartz,* 954 F.2d at 573; *see also In re Soares,* 107 F.3d at 976. Under section 362(d), bankruptcy courts have "the power to ratify retroactively any violation of the automatic stay which would otherwise be void." *In re Schwartz,* 954 F.2d at 573.

We hold accordingly that the judgment against Dr. Jones is void and without ef-

fect because it violated the automatic stay provision of the Bankruptcy Code.[4] Mr. Cain may petition the bankruptcy court to annul the stay retroactively, pursuant to 11 U.S.C. § 362(d). The record before us strongly suggests that Mr. Cain could make a persuasive case for such equitable relief. For example, we think Mr. Cain would be seriously prejudiced if he had to retry this case, since we have found no reversible error in it (see part III, *infra*) except for the stay violation. We note also that, although Dr. Jones represented himself for most of the proceedings in the trial court, he was represented by counsel for approximately seven months after he filed his bankruptcy petition and then again at trial. We find it rather peculiar, to say the least, that neither of his two attorneys knew about the bankruptcy filing or its consequences. Nevertheless, we leave to the bankruptcy court, as we must, the final determination of whether this case meets the requirements of section 362(d), since a hearing held pursuant to that subsection may reveal facts not disclosed by the present record. *See Association of St. Croix Condominium Owners,* 682 F.2d at 448.

### III

Although we conclude that the judgment is without effect, we nevertheless address

---

**4.** Even if we were to agree with those courts that characterize actions taken in violation of a stay as voidable rather than void, we do not believe that the circumstances of this case would justify our affirming the judgment in contravention of the stay (assuming for the sake of argument that we have the power to do so). Those courts in the minority have held that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley,* 990 F.2d at 911. They have suggested "that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfair-

ly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor." *Id.* As we have already observed, although Dr. Jones is attempting now to use the stay to avoid the judgment against him, on the present record we do not find any indication of bad faith in his failure to raise the stay earlier. As a *pro se* litigant throughout much of the process, he apparently did not understand the function or scope of the stay. Thus the facts here are far removed from those in such cases as *Calder* and *Smith Corset Shops,* and would not warrant the sort of equitable relief from the automatic stay which the courts granted in those and similar cases.

Dr. Jones' remaining claims of error because of the possibility that the bankruptcy court may retroactively annul the automatic stay. We find each of those claims to be meritless.

### A. The Denial of the Motion for Continuance

■■■■ Jones contends that the trial court's denial of his motion for continuance on the day trial was scheduled to begin was error. "Ordinarily, the decision to grant or deny a continuance rests in the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Thompson v. Thompson,* 559 A.2d 311, 314 (D.C.1989); *accord, e.g., Edelen v. United States,* 627 A.2d 968, 972 (D.C.1993) ("the trial judge [has] wide latitude as to whether to grant or deny a motion for continuance"). When, as in this case, the request for continuance is not made until the day of trial, we are especially reluctant to reverse the denial of that request. *Esteves v. Esteves,* 680 A.2d 398, 405 (D.C.1996); *Taylor v. Washington Hospital Center,* 407 A.2d 585, 594 (D.C. 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980). On the present record, which shows that Dr. Jones waited until a few days before the scheduled date of trial to obtain counsel and failed to notify the court of his situation until the very day of trial, and in light of the cases cited (and many others that say the same thing), we find no abuse of discretion.

### B. Evidence Not Admitted at Trial

Dr. Jones next contends that the trial court erred when it did not permit him to introduce evidence regarding his trip to Tennessee, including his mother's death certificate, his itinerary listing the dates of travel, and the program from his mother's funeral indicating that he was to deliver the eulogy. He claims that despite Mr. Cain's stipulation as to the dates he was out of town, he should have been permitted to introduce this evidence, which he says was crucial to his case.

Prior to trial, the court asked the parties if they would stipulate to the days during which Dr. Jones was out of town so that he would not have to call out-of-town witnesses to prove any undisputed facts. Mr. Cain agreed to stipulate that Dr. Jones was not in the District of Columbia from December 27 until December 29, 1990. Dr. Jones testified that he was out of town on those dates attending his mother's funeral. He told the jury that his mother had died and explained the effect that her death had had on his state of mind. That testimony was never contradicted by Mr. Cain. We are satisfied that the evidence before the jury more than adequately proved the matters to which the excluded documents related. Because the excluded evidence was essentially redundant, the trial court did not err in excluding it.

### C. The Abandonment Instruction

Dr. Jones' final argument is premised on his misunderstanding of the distinction between real property law, specifically landlord-tenant law, and personal property law. He maintains that the trial court incorrectly instructed the jury on the law of abandonment and that the jury should instead have been instructed in the following language from one of our cases:

> Abandoned property is that to which the owner has voluntarily relinquished all right, title, claim, and possession, with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming future possession or resuming its ownership, possession or enjoyment.

*Kearns v. McNeill Bros. Moving & Storage Co.,* 509 A.2d 1132, 1136 (D.C.1986) (citation omitted).

The language which Dr. Jones cites is a correct statement of the law, but it relates only to personal property and is not applicable here. Dr. Jones describes his defense as an assertion "that the property (the house) had been rented to Cain's wife and that when she separated from Cain, he abandoned the unit." In other words, his defense was that Mr. Cain abandoned the house, not that he abandoned the property left in the house. In landlord-tenant law, however, abandonment is aptly described as an anticipatory breach of the lease. In the District of Columbia, "[a]n abandonment [of leased premises] occurs when a tenant leaves the premises vacant with the avowed intention not to be bound by his lease." *Simpson v. Lee,* 499 A.2d 889, 894 (D.C.1985). The court's instruction in this case, which was nearly identical to this language from *Simpson,* was entirely correct and was consistent with Jones' defense. We find no error.

## IV

We hold that the judgment against Dr. Jones is void and without effect because it violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a). The judgment is therefore vacated, but without prejudice. Mr. Cain may petition the bankruptcy court, under 11 U.S.C. § 362(d), to annul the stay retroactively. If the bankruptcy court grants Mr. Cain

such relief, then the Superior Court shall reinstate the judgment, and that judgment, as reinstated, shall stand affirmed. However, if Mr. Cain does not seek relief from the stay, or if the bankruptcy court denies such relief, the judgment shall remain vacated.[5]

*It is so ordered.*

SCHWELB, Associate Judge, dissenting:

I regret that I cannot agree with the court's disposition of this appeal. First, as explained in Cain's brief, the bankruptcy proceeding initiated by Jones was dismissed on March 11, 1997, and is no longer pending. Accordingly, the automatic stay entered by the trial court pursuant to the bankruptcy statute no longer serves any purpose, and it should be vacated as moot, so that Cain can be permitted to enforce forthwith his Superior Court judgment. It seems to me pointless to refer Cain to the Bankruptcy Court, in a case which no longer exists there, when all that needs to be done is for this court to vacate a stay entered by the Superior Court, over which we have appellate jurisdiction. To put the matter another way, the sole remaining legal obstacle to the enforcement by Cain of his Superior Court judgment is a stay entered by the Superior Court, not by the Bankruptcy Court, and the necessary steps should therefore be taken by a District of Columbia court, and not by a federal bankruptcy court.

Second, even if I were to assume that the stay entered by the trial court ren-

---

**5.** 11 U.S.C. § 362(h) provides that any person "injured by any willful violation of a stay [under section 362(a)] *shall recover* actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages" (emphasis added). We express no view as to whether Mr. Cain might be entitled under subsection (h) to recover counsel fees (or any other damages, including punitive damages) for his efforts to obtain a retroactive lifting of the stay, nor do we consider whether such fees might be recoverable in the Superior Court, the bankruptcy court, or both. *But see Powell v. Washington Land Co.,* 684 A.2d 769, 773 & n. 11 (D.C.1996). These issues may, of course, be explored in any further proceedings before the bankruptcy court.

dered Cain's judgment retroactively void, I would decline, on equitable grounds, to permit Jones to claim the protections of the automatic stay provision. I consider the case indistinguishable in principle from *In re Calder,* 907 F.2d 953 (10th Cir.1990), and, in particular, from the passage from *Calder* quoted at page 11 of the majority opinion.

The key fact here is that Jones litigated the merits of his dispute with Cain in the Superior Court without disclosing, either to the court or to Cain, that an automatic stay was in effect. It was only after Jones had lost his case on the merits that he undertook to avoid paying the sum that the jury had awarded to Cain by belatedly revealing the existence of the stay. As in *Calder,* 907 F.2d at 956–57, Jones asks us "to permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in [the Superior Court]." The court in *Calder* would not countenance such an inequitable result, and neither should we.

To be sure, there is no explicit finding of bad faith on Jones' part; there could not be, for there has not been an adversarial examination of Jones on the subject. Indeed, the sequence of events orchestrated by Jones has prevented any judicial assessment of his good faith or lack thereof. But the trial court found, and I agree, that "[b]ecause defendant never raised the stay until after he lost at trial, he misused the resources of this Court and effectively misled plaintiff and the Court by continuing to litigate the case after the filing of his bankruptcy petition." Moreover, even though appellate courts do not function as finders of fact, we as judges are not supposed to check in our common sense at the courthouse door. I cannot believe that Jones would have brought the stay to the court's attention if he had prevailed on the merits in the Superior Court, the trial judge evidently did not believe it either, and I do not suppose that my colleagues in the majority believe it. Indeed, if we were to credit the existence of such an improbable scenario, we would surely be what Justice Holmes called "naif, simple-minded" judges who "need something of Mephistopheles," as well as "education in the obvious." OLIVER WENDELL HOLMES, *Law and the Court,* in COLLECTED LEGAL PAPERS 291, 295 (1920). Indeed, unless judges are expected to "shut their minds to that which all others can see or understand," *Poulnot v. District of Columbia,* 608 A.2d 134, 141 (D.C.1992) (citing *Child Labor Tax Case,* 259 U.S. 20, 37, 42 S.Ct. 449, 66 L.Ed. 817 (1922)), we ought not to suppose that Jones' belated invocation of the stay was unrelated to his loss on the merits in the Superior Court. The trial judge did not suppose that, opining instead that Jones "effectively misled the plaintiff and the court," and the law is not so remote from reality that judges are precluded from treating the obvious as obvious.

But even if we were to assume that losing the Superior Court case had nothing to do with the lateness of Jones' disclosure—an assumption which, on the record here, seems dubious to say the least—that ought not to be controlling. The *effect* of what Jones did was to prevent the enforcement of the judgment against him by disclosing the existence of the stay only after Jones had lost the Superior Court case. His nondisclosure while that case was proceeding caused the court, Cain, the jurors, and all other participants in the trial to expend much time and energy which need not and would not have been expended if timely disclosure had been made. Jones should be "held to have intended the natural result which flowed from [his] conduct." *Rabinowitz v. United States,* 366 F.2d 34, 56 (5th Cir.1966) (citations omitted). Moreover, given the consequences of Jones' actions, it would be of no consola-

tion to Cain even if those actions were taken in good faith. *Cf. Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The majority attempts to distinguish *Calder* upon the ground that the debtor in *Calder* was himself a bankruptcy attorney, while Jones was proceeding *pro se* at the time he secured the automatic stay. I must acknowledge that the manipulation of the automatic stay procedure by a bankruptcy lawyer makes *Calder* a more colorful case than this one, but I do not believe that the asserted distinction should be dispositive. There is no evidence that Jones—who is known as *Dr.* Jones and who does business as KJA Associates— was indigent and could not afford counsel; indeed, he was represented by counsel on appeal. "[A]lthough a plaintiff has a right to proceed *pro se,* such a litigant can expect no special treatment from the court," *Abell v. Wang,* 697 A.2d 796, 804 (D.C. 1997), and I "do not believe that [Jones'] status as a *pro se* litigant warrants a different result [from that in *Calder* ]." *West v. Morris,* 711 A.2d 1269, 1272 n. 5 (D.C. 1998).

As Justice Black, writing for the Court, explained in *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 232–33, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959),

> no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts....

*Accord, Ray v. Queen,* 747 A.2d 1137, 1142 (D.C.2000). Whatever Jones' subjective state of mind may have been, his delay in disclosing the automatic stay was, as the trial judge indicated, costly both to Cain and to the taxpayers, but it has operated to Jones' own advantage and has, so far, protected him from paying a judgment with which the court finds no substantive fault. I would not permit Jones to profit in this way from his self-serving and wrongful nondisclosure.

In his brief, Cain argues as follows:

> In the instant case, Appellant remained totally silent about the existence of a bankruptcy case throughout the two years leading up to the trial in the court below, *and throughout the trial as well.* In these peculiar circumstances, the post-judgment revelation of a pre-existing bankruptcy action can readily be seen for what it is; a transparent ... attempt to overturn a fairly won verdict.... As even Appellant admits, this Court can properly consider equitable factors in its determination as to the effect of the bankruptcy stay, and if ever there was an instance where equity should override formalism it is this one. [Citations omitted.]

> Furthermore, public policy would seem to demand that the judgment of the jury be upheld. If Appellant is permitted to nullify an entire trial and void a jury judgment simply by means of pulling the "bankruptcy case" rabbit out of his hat, then no trial for damages is safe.... If defendant prevails, the bankruptcy need not be mentioned; but if he loses, presto!, the judgment is voided. Appellee can think of no surer recipe for anarchy in the courts than the judicial sanctioning of such a ... trial tactic.

(Italics in original; some argumentative adjectives omitted.) I agree, and therefore respectfully dissent. I would follow *Calder,* vacate the trial court's stay,[1] and

---

1. It should be noted that the trial judge issued her stay in December 1995, and the bankruptcy proceeding was not dismissed until March 11, 1997.

**334**

permit Cain to enforce his judgment forthwith.